IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| C-AIR CUSTOMHOUSE BROKERS-FORWARDERS, INC., ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | No. 2:18-cv-00178-TRM-MCLC |
| RGE (USA), INC., ) ) | JURY DEMANDED |
| Defendant. ) | |

## MOTION AND MEMORANDUM OF LAW FOR PREJUDGMENT ATTACHMENT OF DEFENDANT'S REAL PROPERTY

Plaintiff, C-Air Customhouse Brokers-Forwarders, Inc. ("C-Air"), by and through counsel and pursuant to Fed. R. Civ. P. 64 and Tenn. Code Ann. § 29-6-101, *et seq*., respectfully moves this Court for a Writ of Attachment against Defendant RGE (USA), Inc.'s ("RGE") real property in Cocke County, Tennessee. C-Air would show as follows:

### INTRODUCTION

This lawsuit arises from C-Air's importation of certain goods for the benefit of RGE for which RGE has not fulfilled its duty to pay. [*See generally* Doc. 1]. More specifically, C-Air performed customs brokerage services for RGE by importing and readying for shipment goods to be used at RGE's injection molding facility in Newport, Tennessee. [*Id.*]. C-Air performed these services and incurred and paid charges on RGE's behalf, from July 30, 2018, to the present. (December 11, 2018, Customer Statement attached as **Exhibit 1**).[1] Excluding attorneys fees and

---

[1] C-Air attached a September 19, 2018, customer statement to its Complaint. C-Air has continued to incur additional fees on behalf of RGE since that date. The December 11, 2018, customer statement attached as Exhibit 1 reflects these additional fees, and C-Air anticipates that additional invoices will be forthcoming. (*See, e.g.,* December 13,

costs, which are provided for in the terms and conditions, RGE is currently indebted to C-Air in the amount of $73,233.94, which reflects credits for partial payments made by RGE.[2] (*See* Exhibits 1-2; December 26, 2018, Letter, attached as **Exhibit 3**). The debt is a just claim, and there is no bona fide dispute to the claim. [*See* Doc. 9, ¶ 13].

## FACTUAL BACKGROUND

### I. RGE (USA), Inc. is owned, headquartered, and controlled in the United Kingdom.

Beginning in June 2018, C-Air began inquiring about overdue balances from its importation work on RGE's behalf, but RGE repeatedly denied the ability to make payments without approval from their ownership and management in the United Kingdom. (Various emails attached as **Exhibit 4**). Jennifer Martin, the accounting manager for RGE, noted that she would "forward" the invoices "to the UK [and] have them contact" C-Air; would "follow up with the UK"; that the U.K was "well aware" of the "high balance" RGE owed C-Air; that she had a "weekly Skype meeting with the UK"; would "request" an additional check from the "UK"; and that she was "in talks with the UK." (*Id.*). On July 20, 2018, in response to whether she had heard from the "UK," Ms. Martin explained that she "did speak with them on the ACH and they are waiting on the owner to return today and they will be discussing this and told me they would get back with me asap." (*Id.* at July 20, 2018, email). Further, on September 14, 2018, Ms. Martin explained that "upper management in the UK" had placed the C-Air debt in dispute because of a

---

2018, and December 27, 2018, invoices attached as **Exhibit 2**). C-Air anticipates seeking leaking to file an amended complaint to reflect these additional charges.

[2] While RGE, in its Answer, suggests that some part of the outstanding balance is in dispute, it clearly admits that there is a debt owing to C-Air. [*See* Doc. 9, ¶¶ 13]. For purposes of this motion, the precise amount of the debt is irrelevant, as the amount of debt is not a factor or element of proving entitlement to prejudgment attachment. Tenn. Code. Ann. § 29-6-101, *et seq.*

new storage charge. (*Id.* at September 14, 2018, email). For all intents and purposes, RGE (USA), Inc. was owned and controlled by its United Kingdom affiliate/parent.

This relationship is consistent with all other publicly available information. In the signature block of Ms. Martin's emails, RGE's website is listed as www.rgegroup.com, which identifies the headquarters as Bridge Works, The Avenue, Godmanchester, Hungtingdon, Cambridgeshire, England, PE29 2AF.[3] The only facility listed for the United States is in Newport, Tennessee—i.e., RGE (USA), Inc. Moreover, there are six UK companies registered at the same Cambridgeshire address, all of which are generally associated with the same corporate officers.[4]

Without question, RGE is part of a group of companies owned, headquartered, and controlled in the United Kingdom.

## II. RGE is divesting all assets.

Beginning in June 2018, RGE became significantly dilatory in its payments to C-Air. (*See* Exhibit 4). As noted above, RGE had to request permission from its parent company in the United Kingdom to make payment to C-Air. (*Id.*). Shortly after RGE informed C-Air that it was ceasing doing business with C-Air [Doc. 3-4] and that it was placing C-Air's account in dispute [Doc. 3-

---

[3] Screenshots of the relevant webpages are attached as **Exhibit 5**, last accessed on February 12, 2019.

[4] These companies are RGE Capital Limited; R G E Yate Limited; RGE Tooling Limited; RGE Sparks Eroders; RGE Operations Limited; and RGE Engineering Limited. The overview, filing, and officer information for these companies can by found at the UK's Companies House website, which is the registrar of companies in the UK and similar to the Secretary of State in Tennessee.

There is also a company registered as RGE Group LTD. While the www.rgegroup.com website consistently denominates its enterprise as "RGE Group," it is unclear what relationship RGE Group LTD has with RGE (USA), Inc. RGE Group LTD's registered address is 68b Rathfern Road, London, United Kingdom, SE6 4NL; it was dissolved on January 15, 2019; and its only listed officer is Godwin Osunde, a Nigerian individual.

5], RGE, through counsel, notified its "Suppliers and Vendors" that it was "closing its production facility in Tennessee with immediate effect." [Doc. 3-8].

After this lawsuit was filed, RGE's counsel notified undersigned counsel that RGE "has commenced liquidating its assets for the purpose of distributing the proceeds to its creditors."[5] (Exhibit 3). The letter noted that RGE is auctioning its equipment and furnishings and, impliedly, attempting to sell its real estate. (*Id.*). It is clear that RGE is divesting all assets in Tennessee— and in fact the United States, as the Newport, Tennessee facility was the only listed United States address.[6] (*Id.*).

Additionally, payments for RGE's imported goods have been remitted directly to the United Kingdom. For example, one shipment of goods to RGE, on or around June 29, 2018, was accompanied by an invoice from Basell Sales & Marketing Company. (Invoice attached as **Exhibit 8**). The invoice notes that payment will be remitted to Basell Sales & Marketing Company and provides a United Kingdom bank and routing number. (*Id.*). C-Air is listed on the invoice as handling the import security filing. (*Id.*).

Given the United Kingdom parent's control over RGE, as discussed above, and the payments that have already been directly remitted to the United Kingdom, the only reasonable expectation is that RGE will transfer its Tennessee assets outside of Tennessee.

---

[5] The letter enclosed a check. This amount was credited to RGE's outstanding balance in the $73,233.94 figure above.

[6] The Comptroller of the Treasury for the State of Tennessee lists RGE (USA) Inc. as the owner of two parcels of property in Cocke County, Tennessee: Map 047, Parcel 001.09 and Map 047, Parcel 001.14. (Assessments attached as **Exhibit 6**). The Cocke County Register of Deeds shows that RGE is the owner of three parcels of property: WD Book 1146, Page 612; WD Book 366, Page 103; and WD Book 342, Page 378. (Deeds attached as **Exhibit 7**).

# STANDARD

Rule 64 of the Federal Rules of Civil Procedure provides: "At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64. Rule 64 "'gives federal courts jurisdiction to impose every remedy available under the laws of the state where the court is located to secure satisfaction of a potential judgment,' and specifically contemplates the remedy of attachment." *Eberhard v. Physicians Choice Lab. Servs., LLC*, No. 3:15-0156, 2016 WL 6432794, at *2 (M.D. Tenn. Oct. 31, 2016) (quoting *Bristol Anesthesia Servs., P.C. v. Carilion Clinic Medicare Res., LLC*, No. 2:15-cv-17, 2016 WL 885089, at *4 (E.D. Tenn. March 8, 2016)).

Tennessee law provides for the prejudgment attachment of a defendant's real property in certain enumerated situations:

> Any person having a debt or demand due at the commencement of an action, or a plaintiff after action for any cause has been brought, and either before or after judgment, may sue out an attachment at law or in equity, against the property of a debtor or defendant

Tenn. Code Ann. § 29-6-101. Relevant to this proceeding, the statute allows for prejudgment attachment in the following cases:

a. "Where the debtor or defendant resides out of the state." Tenn. Code Ann. § 29-6-101(1).

b. "Where the debtor or defendant is about to remove, or has removed, the debtor's or defendant's person or property from the state." Tenn. Code Ann. § 29-6-101(2).

c. "Where the debtor or defendant has fraudulently disposed of, or is about fraudulently to dispose of, the property." Tenn. Code Ann. § 29-6-101(6).

## ARGUMENT

There are clear grounds for prejudgment attachment of RGE's real property assets under Tenn. Code Ann. § 29-6-101(1), (2), and (6):

a. RGE has wound up its business in the state of Tennessee and no longer resides within the state.

b. RGE will transfer all of its remaining property to the RGE Head Office in the UK.

c. As RGE is now claiming a financial inability to pay its debts, these foreign transfers of property were done to keep their assets from C-Air.

### I. RGE is located in the United Kingdom.

Where, as here, there is a liquidated debt and the defendant resides outside of the state, a plaintiff is entitled to a writ of attachment on any property located within Tennessee without further showing. Tenn. Code Ann. §§ 29-6-101(1), 29-6-102; *see also Citizens & Southern Nat'l Bank v. Auer*, 514 F. Supp. 631, 634 n.2 (E.D. Tenn. 1977) (attaching real property of defendants where there was a liquidated debt and defendants resided out of the state). It is clear that RGE resides out of the state, as RGE's parent corporation's complete dominion and control requires a finding that RGE resides in the United Kingdom.

Where a parent corporation exercises "complete dominion and control" over a subsidiary, the corporate formality should be disregarded. *Southeast Texas Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 675 (6th Cir. 2006). The formality should be disregarded where the instrumentality rule applies, which requires proof of the following: (1) the parent corporation's domination over the subsidiary with respect to the transaction at issue, (2) which wrongfully destroys the rights of a third party, and (3) results in a loss. *Continental Bankers Life Ins. Co. of the S. v. Bank of Alamo*, 578 S.W.2d 625, 632 (Tenn. 1979). While disregarding the corporate

formalities is a concept "enshrouded in the mists of metaphor," *id.*, "[t]he analysis hinges on the right to control the agent's actions, . . . and, ultimately, the fact of actual control over the agent." *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 653 (Tenn. 2009).

Indubitably, the United Kingdom parent corporation had the right, and in fact did, control RGE such that RGE had no mind of its own, all of which deprived C-Air of payment for its services. Ms. Martin expressed a complete inability to make payment without approval from the parent corporations in the United Kingdom: she would "forward" the invoices "to the UK [and] have them contact" C-Air; she would "follow up with the UK"; the U.K was "well aware" of the "high balance" RGE owed C-Air; she had a "weekly Skype meeting with the UK"; she would "request" an additional check from the "UK"; and she was "in talks with the UK." (Exhibit 4). On July 20, 2018, in response to whether she had heard from the "UK," Ms. Martin explained that she "did speak with them on the ACH and they are waiting on the owner to return today and they will be discussing this and told me they would get back with me asap." (*Id.* at July 20, 2018, email). Further, on September 14, 2018, Ms. Martin explained that "upper management in the UK" had placed the C-Air debt in dispute because of a new storage charge. (*Id.* at September 14, 2018, email). This control is consistent with RGE's website, which identifies its headquarters as Bridge Works, The Avenue, Godmanchester, Hungtingdon, Cambridgeshire, England, PE29 2AF.

RGE was completely controlled by its United Kingdom parent corporation. As such, it should be deemed to reside in the United Kingdom. Because the debt between C-Air and RGE is liquidated—i.e., it is due and certain—prejudgment attachment of RGE's real property in Cocke, County, Tennessee under section 29-6-101(1) is appropriate.

## II. RGE is transferring all of its property outside of Tennessee.

C-Air is also entitled to a writ of attachment because RGE is transferring its person and property out of the state. Tenn. Code Ann. § 29-6-101(2), (6).

Even if the corporate formality should not be disregarded, the evidence suggests that RGE is removing its person and assets out of Tennessee: RGE has notified its "Suppliers and Vendors" that it was "closing its production facility in Tennessee with immediate effect." [Doc. 3-8]. RGE's counsel notified undersigned counsel that RGE "has commenced liquidating its assets for the purpose of distributing the proceeds to its creditors." (Exhibit 4). The same letter noted that RGE is auctioning its equipment and furnishings and, impliedly, attempting to sell its real estate. (*Id.*).

Additionally, payments for RGE's imported goods have already been remitted directly to the United Kingdom. For example, one shipment of goods to RGE, on or around August 13, 2018, was accompanied by an invoice from Basell Sales & Marketing Company. (Exhibit 8). The invoice notes that payment will be remitted to Basell Sales & Marketing Company and provides a United Kingdom bank and routing number. (*Id.*). C-Air is listed on the invoice as handling the import security filing. (*Id.*). Instead of make payment on its debt to C-Air, RGE remitted the payment directly to the United Kingdom.

Furthermore, evidence of a fraudulent removal of property from Tennessee is shown by the manner in which the RGE facility in Newport, TN was closed. Pursuant to Tenn. Code. Ann. § 50-1-601, *et seq.*, an employer operating a factory/plant with 50 to 99 employees must give advance notice to their employees, local government, and the Tennessee Department of Labor –

Dislocated Worker Unit. Upon information and belief, RGE employed more than 50 employees at its Newport facility. No notice was given prior to RGE's closure of the Newport facility.[7]

RGE is attempting to remove its person and property outside of Tennessee, all of which is designed to prevent the full payment of its obligations to C-Air.

## CONCLUSION

RGE is exclusively controlled by its parent corporation in the United Kingdom and is an out-of-state resident. Furthermore, RGE has shuttered all operations in Tennessee and has, and will continue, to remove its assets out of the state. C-Air is entitled to prejudgment attachment against RGE's remaining real property in Tennessee.

Respectfully submitted this 12th day of February, 2019.

**PAINE | TARWATER | BICKERS, LLP**

/s Thomas A. Bickers_____
Thomas A. Bickers (BPR #012568)
Adam R. Duggan (BPR #035121)
900 South Gay Street, Suite 2200
Knoxville, Tennessee 37902-1821
(865) 525-0880 (phone)
(865) 521-7441 (fax)
*Counsel for C-Air Customhouse*
*Brokers-Forwarders, Inc.*

---

[7] A list of closure/layoff notices is maintained at https://www.tn.gov/workforce/general-resources/major-publications0/major-publications-redirect/reports.html. Going back to October 26, 2017, there was no notice provided by RGE.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by United States mail. Parties may access this filing through the Court's electronic filing system.

Lynn Tarpy
Tarpy, Cox, Fleishman & Leveille
Landmark Center North Tower
1111 N. Northshore Drive
Suite N-290
Knoxville, Tennessee 37919
(865) 588-1096
*Attorney for RGE (USA), Inc.*

This 12th day of February, 2019.

/s Thomas A. Bickers_____

## VERIFICATION

STATE OF New York )
)
COUNTY OF NASSAU )

The undersigned affiant, having been first duly sworn according to law, deposes and says that the allegations contained in the foregoing and annexed Motion are true of his/her own personal knowledge, or true based on business records maintained by C-Air Customhouse Brokers-Forwards, Inc. in the course of its regularly conducted business affairs, of which he is knowledgeable or custodian, except only for those allegations based on information and belief, and those he believes to be true.

_____
[signature: Janit Stafford]

Sworn to and subscribed before me this
6 day of February, 2019.

_____
[signature: Rosemarie Dorn]
Notary Public

My Commission Expires: 9/22/2019

**ROSEMARIE DORN**
Notary Public, State of New York
No. 01DO6098726
Qualified in Nassau County
Commission Expires September 22, 20 19