| | | |
|---|---|---|
| C-AIR CUSTOMHOUSE BROKERS-FORWARDERS, INC., | ) ) ) | Case No. 2:18-cv-178 |
| *Plaintiff*, | ) ) | Judge Travis R. McDonough |
| v. | ) ) | Magistrate Judge Clifton L. Corker |
| RGE (USA), INC., | ) ) | |
| *Defendant*. | ) | |

# MEMORANDUM AND ORDER

Before the Court is Plaintiff C-Air Customhouse Brokers-Forwarders, Inc.'s ("C-Air") motion for prejudgment attachment of Defendant RGE (USA), Inc.'s ("RGE") real property (Doc. 16). For the reasons stated hereafter, C-Air's motion will be **DENIED**.

## I. BACKGROUND

This lawsuit arises from services provided by C-Air to RGE, for which C-Air was never paid. Between July 30, 2018, and September 18, 2018, C-Air imported certain goods for RGE into the United States, coordinated customs and importation regulations and costs, and shipped RGE's goods. (Doc. 1, at 2.) The parties do not dispute that RGE owes C-Air money for services rendered; however, the exact amount of the debt remains in dispute. (Doc. 1, at 3; Doc. 9, at 2.)

## II. STANDARD OF LAW

Federal Rule of Civil Procedure 64 provides, in relevant part, that, "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the

state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Under Tennessee law:

> Any person having a debt or demand due at the commencement of an action, or a plaintiff after action for any cause has been brought, and either before or after judgment, may sue out an attachment at law or in equity, against the property of a debtor or defendant, in the following cases:
>
> (1) Where the debtor or defendant resides out of the state;
>
> (2) Where the debtor or defendant is about to remove, or has removed, the debtor's or defendant's person or property from the state;
>
> (3) Where the debtor or defendant has removed, or is removing, the debtor's or defendant's person out of the county privately;
>
> (4) Where the debtors or defendants concealed is so that the ordinary process of law cannot be served upon the debtor or defendant;
>
> (5) Where the debtor or defendant absconds, or absconded concealing the debtor's or defendant's person or property;
>
> (6) Where the debtor or defendant has fraudulently disposed of, or is about fraudulently to dispose of, the property;
>
> (7) Where any person liable for any debt or demand, residing out of the state, dies, leaving property in the state; or
>
> (8) Where the debtor or defendant is a foreign corporation which has no agent in this state upon whom process may be served by any person bringing suit against such corporation; provided, that the plaintiff or complainant need only make oath of the justness of the claim, that the debtor or defendant is a foreign corporation and that it has no agent in the county where the property sought to be attached is situated upon whom process can be served.

Tenn. Code Ann. § 29-6-101. The parties agree that, because state law provides for pre-judgment attachment of real property in certain cases, Rule 64 permits C-Air to pursue this remedy.

However, to succeed on its motion for attachment, a plaintiff must show, by a preponderance of the evidence, that grounds for attachment exist. *Commerce Union Bank v.*

*Kephart*, No. 85-300-II, 1986 WL 4280, at *4 (Tenn. Ct. App. Apr. 9, 1986). And, "[a]llegations made in support of a requested attachment must be based on something more than mere speculation." *Eberhard v. Physicians Choice Lab. Servs., LLC*, No. 3:15-0156, 2016 WL 6432794, at *2 (M.D. Tenn. Oct. 31, 2016), *report and recommendation adopted*, No. 3:15-CV-0156, 2016 WL 6833658 (M.D. Tenn. Nov. 21, 2016) (citation omitted). "Strict construction is afforded to the attachment statutes insofar as the enumerated causes for which attachment may issue." *Orlowski v. Bates*, No. 2:11-CV-01396, 2015 WL 6159494, at *4 (W.D. Tenn. Oct. 20, 2015); *see also BWI, Inc. v. Dobson-Hicks Co.*, No. 02A01-9202CH00037, 1992 WL 131784, at *3 (Tenn. Ct. App. June 16, 1992) ("We stress that insofar as the grounds for such an attachment are concerned, they are strictly construed, as the remedy is in derogation of the common law.").

### III. ANALYSIS

C-Air argues that, in this case, "there are clear grounds for prejudgment attachment of RGE's real property assets" under Tennessee Code Annotated §§ 29-6-101(1), (2), and (6). (Doc. 16, at 6.)

#### A. Whether RGE Resides Outside of Tennessee

Under Tennessee Code Annotated § 29-6-101(1), a plaintiff may seek pre-judgment attachment of real property "[w]here the debtor or defendant resides out of the state." A corporation is a citizen of and subject to personal jurisdiction in its place of incorporation and its principal place of business. *See, e.g.*, *Vaughn v. Holiday Inn Cleveland Coliseum*, 56 F. App'x 249, 250 (6th Cir. 2003). And, as defined under the federal venue statute, a corporation resides in any judicial district within a state where it would be subject to personal jurisdiction. *See* 28 U.S.C. § 1391(d). RGE is a Delaware corporation with its principal place of business in

3

Newport, Tennessee.  (*See* Doc. 1, at 1; Doc. 9, at 1; Doc. 23, at 1.)  Thus, it is clear that RGE is a resident of Tennessee.

Nevertheless, C-Air argues that RGE's corporate form should be disregarded because it is completely controlled by its United Kingdom parent corporation and, therefore, "should be deemed to reside in the United Kingdom."  (Doc. 16, at 7.)  As support for its argument, C-Air points to e-mail communications between Jennifer Martin, the accounting manager for RGE, wherein Martin "expressed a complete inability to make payment without approval from the parent corporations in the United Kingdom,"[1] as well as RGE's website, which indicates its headquarters are located in the United Kingdom.  (*See* Doc. 16 at 7; *see also* Docs. 16-4, 16-5.)  RGE argues that the e-mails between Martin and C-Air indicate only that the management of RGE was located outside of Tennessee, but fail to "demonstrate complete dominion of RGE by an unidentified identity in the United Kingdom."  (Doc. 23, at 3.)

In Tennessee, "[p]arent and subsidiary corporations are presumed to be separate and distinct legal entities" and courts are reluctant "to disregard the separate existence of related corporations."  *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 651 (Tenn. 2009).  For the purposes of personal jurisdiction, a parent corporation's "general involvement with the

---

[1] The following is a summary of the e-mail exchanges as provided by C-Air in its motion:

> Jennifer Martin, the accounting manager for RGE, noted that she would "forward" the invoices "to the UK [and] have them contact" C-Air; would "follow up with the UK"; that the U.K was "well aware" of the "high balance" RGE owed C-Air; that she had a "weekly Skype meeting with the UK"; would "request" an additional check from the "UK"; and that she was "in talks with the UK."  On July 20, 2018, in response to whether she had heard from the "UK," Ms. Martin explained that she "did speak with them on the ACH and they are waiting on the owner to return today and they will be discussing this and told me they would get back with me asap."  Further, on September 14, 2018, Ms. Martin explained that "upper management in the UK" had placed the C-Air debt in dispute because of a new storage charge.

(Doc. 16, at 2–3) (internal citations omitted).

subsidiary corporation's performance, finance and budget decisions, and general policies and procedures does not provide a basis for attributing one corporation's contacts with the forum to the other for the purposes of personal jurisdiction." *Id.* at 651–52. Nevertheless, the corporate veil may be pierced when the two corporations are essentially alter egos. *Id.* at 652. In other words, the corporate veil may be pierced when the parent corporation "exercises complete dominion over its subsidiary, not only of finances, but of policy and business practice in respect to the transaction under attack, so that the corporate entity, as to that transaction, had no separate mind, will or existence of its own." *Id.* at 653; *accord Se. Texas Inns, Inc. v. Prime Hosp. Corp.*, 462 F.3d 666, 675 (6th Cir. 2006) (describing that, "to hold a parent corporation liable for the actions of a subsidiary pursuant to the alter ego doctrine, a plaintiff must demonstrate that the parent corporation exercises 'exclusive domination and control' to the point that the subsidiary 'no longer ha[s] legal or independent significance of [its] own'").

C-Air has not provided facts sufficient to overcome the presumption of corporate separateness. The e-mail exchanges highlighted by C-Air are evidence that RGE's parent corporation exercises substantial control over its finances and other management decisions, but fail to demonstrate exclusive dominion and control or that RGE had no separate existence of its own. Accordingly, it cannot be said that RGE resides outside of Tennessee and, therefore, § 29-6-101(1) provides no basis for attachment.

### B. Whether RGE Has Removed Its Property From Tennessee

Under Tennessee Code Annotated § 29-6-101(2), a plaintiff may seek pre-judgment attachment of real property "[w]here the debtor or defendant is about to remove, or has removed, the debtor's or defendant's person or property from the state." C-Air argues that "RGE is removing its person and assets out of Tennessee." (Doc. 16, at 8.) As evidence of this, C-Air

points to: (1) a letter notifying RGE's suppliers and vendors that it is closing its production facility in Tennessee "with immediate effect" (Doc. 3-8); (2) a letter from RGE to C-Air's counsel indicating that RGE has "commenced liquidating assets for the purpose of distributing the proceeds to its creditors" and that its equipment and furnishings will be auctioned (Doc. 16-3)[2]; and (3) an invoice indicating that RGE has made certain payments for imported goods to an entity other than C-Air (Doc. 16-8). In response, RGE contends that C-Air's belief that "RGE is making an attempt to cut and run . . . is totally at odds with both RGE's behavior, and with communications made by counsel for RGE to C-Air." (Doc. 23, at 4.) RGE asserts that it is indebted to multiple creditors and is taking steps to satisfy them all. Specifically, RGE points to the $9,101.30 payment it made to C-Air on December 26, 2018. (*See* Doc. 16-3.)

C-Air has failed to satisfy its burden to show that RGE has transferred or is about to transfer its property out of Tennessee. Although the actions taken by RGE in liquidating its asserts and closing its facility may be consistent with an intent to transfer property out of state, they may also be consistent with an intent to pay off creditors. Additionally, Plaintiff offers no facts that lead the Court to believe a property transfer out of Tennessee is imminent, such as a pending shipment of equipment to the United Kingdom. *Compare In re Chemical Separations*

---

[2] As relevant, the text of the December 26, 2018 letter reads:

> As you are aware, this firm represents RGE (USA), Inc. As you have been made aware through contact with me, our client has commenced liquidating its assets for the purpose of distributing the proceeds to its creditors.
>
> Enclosed is a check for your client C-Air for $9,101.30 which represents its pro rata share of the first $200,000.00 being distributed. At least one other distribution will be made in late February or March after the equipment and furnishings have been auctioned and the closure completed. A further distribution may be made if the real estate sells for more than what is owed on the mortgage. Your deposit of this check will not be deemed as any type of settlement of the litigation. It obviously reduces the amount of the claim.

(Doc. 16-3.)

*Corp.*, 29 B.R. 240, 247 (Bankr. E.D. Tenn. 1983) (finding averments that "equipment of a value of $50,000.00 was either shipped on June 18, 1982, or was about to be shipped, to Indiana, and that equipment of a value of $200,000.00 was about to be shipped to Florida on June 25, 1982" clearly supported "plaintiff's assertion that property of the defendant was about to be removed beyond the borders of the State of Tennessee when plaintiff sought a writ of attachment"). Construing § 29-6-101(2) strictly, as it is required to do, the Court finds that it affords no basis for attachment at this time.

### C. Whether RGE Has Fraudulently Disposed of Its Property

Under Tennessee Code Annotated § 29-6-101(6), a plaintiff may seek pre-judgment attachment of real property "[w]here the debtor or defendant has fraudulently disposed of, or is about fraudulently to dispose of, the property." C-Air argues that the closure of RGE's facility in Newport, Tennessee is evidence of its fraudulent removal of property because RGE employed more than fifty employees and failed to provide advance notice of the closure to employees, local government, and the Tennessee Department of Labor as required by Tennessee law. (Doc. 16, at 8–9.)

Black's Law Dictionary defines "fraudulent act" as "[c]onduct involving bad faith, dishonesty, a lack of integrity, or moral turpitude." *Fraudulent Act*, Black's Law Dictionary (10th ed. 2014). Similarly, "fraudulent conveyance" is defined as a "transfer of an interest in property for little or no consideration, made for the purpose of hindering or delaying a creditor by putting the property beyond the creditor's reach; a transaction by which the owner of real or personal property seeks to place the property beyond the reach of creditors." *Fraudulent Conveyance*, Black's Law Dictionary (10th ed. 2014). Both of these definitions imply bad faith or an intent to deceive. Although C-Air may be correct in its assertion that RGE failed to

7
Case 2:18-cv-00178-TRM-MCLC   Document 25   Filed 03/15/19   Page 7 of 8   PageID #: 127

*Corp.*, 29 B.R. 240, 247 (Bankr. E.D. Tenn. 1983) (finding averments that "equipment of a value of $50,000.00 was either shipped on June 18, 1982, or was about to be shipped, to Indiana, and that equipment of a value of $200,000.00 was about to be shipped to Florida on June 25, 1982" clearly supported "plaintiff's assertion that property of the defendant was about to be removed beyond the borders of the State of Tennessee when plaintiff sought a writ of attachment"). Construing § 29-6-101(2) strictly, as it is required to do, the Court finds that it affords no basis for attachment at this time.

### C. Whether RGE Has Fraudulently Disposed of Its Property

Under Tennessee Code Annotated § 29-6-101(6), a plaintiff may seek pre-judgment attachment of real property "[w]here the debtor or defendant has fraudulently disposed of, or is about fraudulently to dispose of, the property." C-Air argues that the closure of RGE's facility in Newport, Tennessee is evidence of its fraudulent removal of property because RGE employed more than fifty employees and failed to provide advance notice of the closure to employees, local government, and the Tennessee Department of Labor as required by Tennessee law. (Doc. 16, at 8–9.)

Black's Law Dictionary defines "fraudulent act" as "[c]onduct involving bad faith, dishonesty, a lack of integrity, or moral turpitude." *Fraudulent Act*, Black's Law Dictionary (10th ed. 2014). Similarly, "fraudulent conveyance" is defined as a "transfer of an interest in property for little or no consideration, made for the purpose of hindering or delaying a creditor by putting the property beyond the creditor's reach; a transaction by which the owner of real or personal property seeks to place the property beyond the reach of creditors." *Fraudulent Conveyance*, Black's Law Dictionary (10th ed. 2014). Both of these definitions imply bad faith or an intent to deceive. Although C-Air may be correct in its assertion that RGE failed to

comply with the notice provisions under Tennessee law, such failure does not necessarily fall within the meaning of "fraudulent" intended by § 29-6-101(6). Additionally, the letter sent by RGE to C-Air's counsel indicates that RGE has made efforts to keep C-Air informed of its financial status and its intent to satisfy its debt to C-Air. Accordingly, § 29-6-101(6) does not provide a basis for attachment.

IV. **CONCLUSION**

For the reasons set forth above, the Court **DENIES** C-Air's motion for pre-judgment attachment of RGE's real property (Doc. 16).[3]

**SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**

---

[3] Should C-Air identify additional evidence in support of its assertion that pre-judgment attachment of RGE's real property is appropriate under Tennessee Code Annotated § 29-6-101, it is free to file a new motion to that effect.